ELENA MORAR
A242204656
323 11TH AVE APT A
SAN FRANCISCO CA USA 94118
EMAIL: amor1912@mail.ru
PHONE: 6288779003

FILED

DEC 31 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

Simmon

AGT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### Location: San Francisco

Elena Morar a.k.a. "ELLENA MIRRA"
**Natural Person Appearing Pro Se**
Plaintiff,

Vs.

**Thomas (Tom) Schuurmans,**
In his Official Capacity, Director of
the Nebraska Service Center, U.S.
Citizenship and Immigration
Services;
**Joseph B. Edlow,**
In his Official Capacity, Director, U.S.
Citizenship and Immigration Service;

**United States Citizenship and
Immigration Services;**

**United States Department of
Homeland Security;**

Defendant.

Case No. **CV25-11104**

**COMPLAINT FOR REVIEW OF AGENCY
ACTION UNDER THE
ADMINISTRATIVE PROCEDURES ACT.**

*Exibit tab will be
attached seperately
later.*

## COMPLAINT FOR REVIEW OF AGENCY ACTION UNDER THE
## ADMINISTRATIVE PROCEDURES ACT.

### I. INTRODUCTION

1. This suit challenges the Defendants' arbitrary and unlawful decision to deny an immigrant visa petition in the employment-based first preference extraordinary ability (EB-1A) category filed by Ms. Elena Morar (Plaintiff), a citizen and national of the Russian Federation.

2. Ms. Elena Morar's petition is based on her sustained national and international acclaim and recognized achievements in the field of pole sport and aerial gymnastics placing her among the small percentage of individuals who have risen to the top of the field.

3. Ms. Elena Morar is an extraordinary individual whose remarkable achievements and talents span across multiple domains, showcasing her exceptional abilities and contributions. As a pole fitness performer, Ms. Morar has secured her place among the elite in the field. She has consistently demonstrated her prowess in numerous competitions, earning accolades and medals.

Ms. Elena Morar's achievements encompass a series of impressive victories in pole sport and aerial gymnastics competitions. Her accomplishments include 2nd place at the 2022 USA National Championship in Pole Sport in Orlando, Florida. She emerged as the 1st place winner at the 2022 Golden Gate Pole Championship in San Francisco, California. Her exceptional skill was evident again in the 2022 PSO Central Pole Championship in Chicago, where she achieved a 2nd place. Notably, at the 2022 PSO Southwest Pole Championship in Dallas, she solidified her prowess by securing the 1st place. Elena Morar's achievements include an impressive 1st place victory in the Qualifying Tournament of the Russian Championship Pole Sport Russia 2013. In the subsequent year of 2014, she took a 1st place finish in the Open International Championship Miss Pole Sport Elite in 2014. Furthermore, she secured the 1st place in the Qualifying Round of the Privolzhsky Federal District Russian Pole Sport Championship Pole Sport, Russia 2014.

In addition to her remarkable performances, Ms. Morar has been recognized for her role as a judge in prestigious USA pole sport competitions and artistic castings. Her expertise and discernment have been instrumental in evaluating and enhancing the performances of fellow competitors. Beyond the competitive arena, Ms. Morar has showcased her talents in diverse settings. Her participation in the Vertical Show, a unique performance on the aerial hoop, flying pole, five pols, silks and other equipment, demonstrates her ability to captivate audiences with her aerial artistry. Her engagement in the San Francisco Fashion Week, as both a model and performer, highlights her versatility and artistic sensibilities. Ms. Morar's dedication to her craft is matched by her commitment to giving back to the community. She has conducted free outdoor gymnastics classes for children during the COVID-19 pandemic lockdown, showcasing her generosity and passion for fitness and well-being. Additionally, her coaching of kids' aerobics and involvement in various charity events underscore her positive impact on those around her.

Ms. Morar is a qualified pole fitness instructor, fitness coach, and more. Ms. Morar's story has garnered attention from various media outlets. She has been featured in interviews, news articles, and even a music video, a movie, showing her status as an influential figure. Her reputation has been endorsed by prominent figures, including a recommendation letter from the American Pole League and commendations from the California State Treasurer, Fiona Ma, CPA. Ms. Morar's accomplishments have transcended borders, making her a recognized and respected individual in both national and international contexts. Ms. Elena Morar, under her stage name Ellena Mirra, for many years as one of the top names in pole and aerial sport industries in USA and in Russia. Ms. Elena Morar presented recommendation letters from the American Pole League; an independent expert support letter from expert Mr. Billy Hawkins, Ph.D; a recommendation letter from Kira Bucca, the World Champion of Ultra Pole IPSF; a reference Letter from California State Treasurer Fiona Ma, CPA; a recommendation letter from the USA Aerial Federation; a recommendation letter from the Vertical Show.

4. USCIS found that Ms. Elena Morar satisfied at least three regulatory criteria for the EB-1A visa, namely:

- Evidence of receipt of lesser nationally or internationally recognized prizes or awards for excellence;

- Evidence that you have been asked to judge the work of others, either individually or on a panel;

- Evidence that your work has been displayed at artistic exhibitions or showcases;

However, USCIS issued a Notice of Intent to Deny (NOID) stating that Ms. Morar does

*page 2 of 15*

not possess the high level of expertise required for the EB-1 Immigrant classification.

Subsequently, USCIS denied the EB-1A petition.

5. Ms. Morar filed two motions to reopen and reconsider, as well as an Appeal of the EB-1 Denial with the Administrative Appeals Office (AAO). Motions to reopen and reconsider were dismissed. The AAO dismissed the Appeal.

6. *This action is brought pursuant to §10B of the Administrative Procedures Act, 5 U.S.C. § 702, et seq.* , seeking to hold unlawful and set aside the May 1, 2024 decision of the USCIS denying the EB-1A petition filed by Ms. Morar, as well as the AAO dismissal of the motions to reopen and reconsider, and the appeal. The USCIS' denial of the EB-1A *immigrant petition was arbitrary, capricious, and an abuse of discretion that is contrary to law.* The Court should therefore vacate the denial and direct the USCIS to approve Ms. Morar's petition and grant her EB-1 status that she seeks and deserves.

## II. JURISDICTION

7. This Court has jurisdiction over this action pursuant to 8 U.S.C. § 1331 and 5 U.S.C. 702, since this is a civil action against the United States arising under the Immigration and Nationality Act, 8 U.S.C. § 1101, et. seq., and the Administrative Procedures Act (APA) 5 U.S.C. § 701, et. seq.

## III. VENUE

8. Venue is proper under 28 U.S.C. § 1391(e)(1) because the Defendants are agencies of the United States and officers of the United States acting in their official capacity and 1) the Plaintiff resides in this district; and/or 2) a substantial part of the events or omissions giving rise to the claim occurred in this district.

### Divisional Assignment

9. This case arises in the County of San Francisco, where the plaintiff resides. Accordingly, assignment to the San Francisco Division is proper under Civil L.R. 3-2(c) and (d).

## IV. PARTIES

10. Plaintiff, Ms. Elena Morar is a citizen of the Russian Federation who has been working lawfully in the U.S. pursuant to an approved work authorization.

11. Defendant Thomas (Tom) Schuurmans, in his Official Capacity, Director of the Nebraska Service Center, U.S. Citizenship and Immigration Services; is the Director of the Nebraska Service Center. Prior Director of the Nebraska Service Center signed the *Denial at issue in this case. Defendant Schuurmans is sued in his official capacity.*

12. Defendant Joseph B. Edlow, is the Director of the USCIS, and he is responsible for USCIS' policies, practices, and procedures and oversees the USCIS officer responsible for making the decisions at issue in this case. Defendant Edlow is sued in his official capacity.

13. Defendant U.S. Citizenship and Immigration Services (USCIS) is an agency of the Department of Homeland Security (DHS) and is responsible for overseeing the adjudication of immigration benefits. The Administrative Appeals Office (AAO) is part of the USCIS, and exercises appellate jurisdiction over specific immigration case types filed with the USCIS.

14. Defendant U.S. Department of Homeland Security is a cabinet department of the U.S. *federal government responsible for immigration-related services, enforcement, and*

investigations. DHS oversees USCIS and its implementation of federal law and policy with respect to immigration benefit applications.

## V. THE "EXTRAORDINARY ABILITY" IMMIGRANT VISA

**15.** Pursuant to 8 U.S.C. § 1153(b)(1)(A), aliens may apply for a visa on the basis of extraordinary ability" in the sciences, arts, education, business, or athletics. The enabling regulations define "extraordinary ability" as a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of their field of endeavor. 8 C.F.R. §204.5(h)(2). An alien can prove an extraordinary ability in one of two ways. The first is "evidence of a one-time achievement (that is, a major, international recognized award). 8 C.F.R. § 204.5(h)(3). The second way to prove extraordinary ability is to provide evidence of at least three of the following:

I. Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

II. Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

III. Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

IV. Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specialization for which classification is sought;

V. Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

VI. Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

VII. Evidence of the display of the alien's work in the field of artistic exhibitions or showcases;

VIII. Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

IX. Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

X. Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk or video sales.

**16.** Additionally, the regulation further provides that, "if the above standards do not readily apply to the beneficiary's occupation, the petitioner may submit comparable evidence to establish the beneficiary's eligibility." 8 C.F.R. § 204.5(h)(4).

**17.** In accordance with *Kazarian v. USCIS* , 596 F.3d 1115 (9th Cir. 2010), the USCIS takes a two-step approach in adjudicating an application for an immigrant of extraordinary ability. At the first step, the USCIS limits its determination as to whether the petition is comprised of a one-time achievement, or at least three of the ten regulatory criteria. This first step is a quantitative step consisting of identifying and counting the evidence submitted. If the applicant provides evidence for at least three of the enumerated criteria, the USCIS then proceeds to the second step and conducts a "final merits determination". At this second step, the USCIS then undertakes a qualitative analysis of all the evidence to determine whether the alien has sustained national or international acclaim in their field, indicating that they are one of the small percentage who has risen

18. The petition must also establish that the alien seeks entry to continue working in their area of extraordinary ability. 8 U.S.C. § 204.5(h)(5).

19. If it is shown by a preponderance of the evidence that the EB-1A petition meets the established eligibility requirements for the benefit sought, the petition should be approved. See *Matter of Chawathe*, 25 I & N Dec. 369, 375 (AAO 2010).

20. Expert opinion letters provided in support of visa petitions are probative if they are in accord with other information provided in the record and are not questionable in any way. *Matter of Caron International*, 19 I & N Dec. 791 (Comm 1988).

## VI. FACTUAL ALLEGATIONS

*The I-140 Petition*

21. On August 30, 2023, Ms. Elena Morar self-filed an EB-1A immigration petition for an alien of extraordinary ability in the sciences with the USCIS (LIN2390257554). The petition was based on her achievements in the field of pole sport and aerial gymnastics placing her among the small percentage of individuals who have risen to the top of the field. As she did not have a one-time achievement, her petition was based on meeting at least three of the criteria enumerated at 8 C.F.R. § 204.5(h)(3).

22. Ms. Morar received a Notice of Intent to Deny around February 9, 2024. The USCIS concluded that Ms. Elena Morar satisfied 3 of the 3 required requirements for the EB-1A visa, namely:

- Evidence of receipt of lesser nationally or internationally recognized prizes or awards for excellence;

- Evidence that you have been asked to judge the work of others, either individually or on a panel;

- Evidence that your work has been displayed at artistic exhibitions or showcases;

However, USCIS issued a Notice of Intent to Deny (NOID) stating that Ms. Morar does not possess the high level of expertise required for the E11 Immigrant classification and questioning where she will be gainfully employed. Ms. Morar timely answered the NOID with substantial evidence of her eligibility for the E11 classification. USCIS denied the EB-1A petition.

23. Ms. Morar's initial petition, as well as her response to the Notice of Intent to Deny actually provided evidence to meet the criteria of the E11 classification.

24. First, she provided extensive evidence to meet the criterion at 8 C.F.R. § 204.5(h)(3)(v), which USCIS had accepted as satisfactory. Second, Ms. Morar provided evidence in a 3-part approach:

A. She included additional evidence that the petitioner will be gainfully employed in her area of expertise.

B. She included an analysis of appellate cases and USCIS policy memorandum where USCIS granted immigrant visas to beneficiaries with very similar fact patterns.

C. She included additional evidence of sustained national or international acclaim showing that the petitioner is at the top of her endeavor. She included additional evidence that her achievements have been recognized in the field of expertise, including that the petitioner is one of that small percentage who has risen to the very top of the field of endeavor as requested in the USCIS Notice's 2-part analysis.

25. Specifically, Ms. Morar submitted substantial evidence that she is among the top

professionals in the field of pole and aerial sport. An independent expert letter affirms her elite status in the field, while a detailed support letter from the Vertical Show highlights her selection for a principal performer role in an internationally recognized production that merges pole, aerial, and acrobatic arts. The show, founded by World Pole Champion Pink Puma, integrates elite-level talent and aims to elevate pole sport to Olympic recognition. Ms. Morar's inclusion in the Vertical Show cast for 2024 and future international tours reflects her exceptional skill and reputation. She is prominently featured in promotional materials, including flyers, posters, website cast listings, and photos of her opening the June 2023 performances alongside world-class performers. These materials collectively demonstrate that Ms. Morar is consistently chosen for prominent roles and recognized by leading organizations in the field, underscoring her sustained acclaim and position at the very top of her endeavor.

26. Ms. Elena Morar has submitted compelling and wide-ranging evidence that she has risen to the very top of the pole and aerial sport community, both in the United States and internationally. This includes expert letters from key organizations and individuals, substantial documentation of her performances, judging roles, instructional contributions, leadership responsibilities, and public recognition.

27. A support letter from the American Pole League (APL) confirms her longstanding leadership within the organization, her elite competitive achievements—including her podium finish at the 2022 USA National Championships—and her prominent role as a coach for youth athletes. The APL affirms that Ms. Elena Morar is one of the "top names" in the pole sport industry and emphasizes her significant weekly contributions as the California and West Coast coordinator for the organization, including responsibilities for athlete development, event coordination, and competition planning.

28. A dedicated webpage on the APL site lists her accomplishments and promotes her work as an athlete, performer, and mentor, while additional APL materials highlight her role in organizing national training camps for youth and adults.

29. Further support comes from the USA Aerial Federation, which affirms Ms. Elena Morar's key contribution to the success of the 2023 World Championship held in Miami. As one of the few individuals recognized at the highest level of the sport, she was specifically invited to assist in organizing and supporting this prestigious international event, which featured over 60 participants from multiple countries.

30. The Federation describes Ms. Elena Morar as a "renowned expert" whose professionalism and dedication were essential to the championship's success, especially in engaging and training young athletes. The Federation also endorses her long-term immigration goals and highlights her critical role in advancing the sport within the United States.

31. In addition to her organizational and coaching achievements, Ms. Elena Morar has demonstrated public-facing excellence through her performances in Vertical.Show, a family-friendly, high-production pole and aerial performance company founded by World Champion Pink Puma. She has been prominently featured in multiple performances and is scheduled for further national and international tours. Promotional materials—including cast listings, websites, event posters, brochures, and photography—document her leading role in this cutting-edge production. The show is closely tied to Olympic aspirations for pole and aerial sport, and Ms. Elena Morar's selection for repeated lead roles underscores her elite stature.

32. Ms. Elena Morar's high-level judgment and integrity in the field are also evidenced by her selection as a judge for the Pole Sport Organization, the largest pole sport championship series in the world. She judged competitions in the USA in accordance with official rules and standards and received formal judging certificates for her contributions. These competitions are part of an internationally recognized series that spans North America and Europe, and her participation further confirms her professional standing.

33. Her widespread influence also extends to media and public platforms. Ms. Elena Morar was prominently featured in a music video showcasing her pole fitness performance, which has received over 29,000 views on YouTube—demonstrating both her popularity and her ability to elevate the visibility of the sport to broader audiences.

34. In sum, the evidence clearly demonstrates that Ms. Elena Morar is a top-tier athlete, coach, organizer, and public figure within the discipline of pole and aerial sport. Her achievements have been recognized by multiple respected organizations, including the

American Pole League, USA Aerial Federation, and VerticalShow, and her roles are
performance, training, and judging reflect exceptional expertise and sustained acclaim.
She plays a central role in advancing pole fitness as a competitive sport and Olympic
candidate discipline in the United States, especially among youth. Her leadership,
awards, judging roles, and continued public contributions affirm her position at the very
top of her endeavor.

## The I-140 Denial

35. The USCIS denied Ms. Morar's petition on May 1, 2024. After confirming that Ms.
Morar did satisfy at least 3 of the required criteria. The USCIS then undertook the second
step of the Kazarian analysis to determine whether Ms. Morar had met the regulatory
criteria at 8 C.F.R. § 204.5(h)(3). The USCIS determined that Ms. Morar had not met the
second prong of the required analysis, meaning that she does not possess the high level of
expertise required for the E11 classification under the Matter of Chawathe, 25 I&N
Dec.369 (AAO 2010).

36. Throughout the Denial, the USCIS mischaracterized Ms. Morar's field, calling her a
"pole dancer."

37. Instead of acknowledging the broad field pole sport and aerial gymnastics, the USCIS
incorrectly mischaracterized Ms. Morar as a pole dancer. This incorrect interpretation of
her field led the USCIS adjudicator to dismiss her awards, her role as a judge of
competitions, her contributions to the sport, under the incorrect conclusion that they were
in a different field. This incorrect interpretation also led the USCIS adjudicator to
discount expert letters discussing the significance of her contributions, because the
adjudicator incorrectly concluded the expert was in a different field.

## The I-290B Motion

38. Ms. Morar timely filed I-290B notice of Appeal or Motion (IOE926016226).

39. Ms. Morar respectfully requested that the Administrative Appeals Office (AAO)
reconsider the denial of her EB-1A petition due to multiple errors of fact and law in the
decision issued by USCIS. First and foremost, USCIS improperly misclassified the
petitioner's area of expertise, referring to her as a "pole dancer" rather than recognizing
her as a pole fitness performer and aerial sport athlete. This mischaracterization is not
only factually inaccurate—nowhere in the initial petition or in the NOID response was
she described as a "pole dancer"—but also prejudicial, as the term carries entertainment
industry connotations that do not reflect the petitioner's profession. Pole and aerial sport
is an established discipline in the U.S. and globally, emphasizing strength, athleticism,
artistic expression, and Olympic aspirations. To clarify this distinction, the petitioner
submitted a letter from the American Pole League (APL), as well as maps, Yelp reviews,
and multiple articles demonstrating the prevalence, popularity, and legitimacy of pole
fitness as a sport across major U.S. cities. These exhibits confirm that pole fitness is
widely practiced in structured studio settings—not nightclubs—and is pursued for its
athletic benefits.

40. The petitioner has performed in high-profile venues, including events attended by the
Mayor of San Francisco and the California State Treasurer, and was featured in the
prestigious Vertical Show, a family-friendly, Olympic-oriented stage production that
merges pole and aerial sport with theater. She has also received a letter of support from
California State Treasurer Fiona Ma, recognizing her artistic and athletic contributions.
These performances and official endorsements further demonstrate her stature as a
respected athlete and performer—not an entertainer in the traditional or nightclub sense.

41. Moreover, USCIS failed to appropriately consider the evidence submitted in the
petitioner's NOID response, which was clearly organized around the two-prong
framework from Kazarian v. USCIS, 596 F.3d 1115 (9th Cir. 2010). The response
identified additional evidence that directly addressed the second prong—whether the
petitioner has risen to the very top of her field. The NOID response explicitly labeled the
relevant section as "ADDITIONAL EVIDENCE ABOUT BEING AT THE VERY TOP

or HER ENDEAVOR" and included 20+ exhibits illustrating national and international acclaim. By not referencing or engaging with that evidence in its decision, USCIS committed a prejudicial error that undermines the integrity of the adjudication process.

42. The record also clearly established that Ms. Elena Morar is a national and international champion, having placed 1st or 2nd in multiple U.S. championships in 2022—including the USA National Pole Championship in Orlando, the Golden Gate Pole Championship in San Francisco, and the PSO Central and Southwest Championships in Chicago and Dallas. She has won international championships as far back as 2013 and 2014 in Russia, placing first in several prestigious events. These awards are documented with scorecards, medals, and photos and demonstrate sustained competitive excellence.

43. In addition, Ms. Morar plays a critical leadership role in the American Pole League, the official U.S. affiliate of the International Pole Sports Federation (IPSF), which oversees Olympic-style pole sports competitions globally. As the California Coordinator for APL, the petitioner is responsible for athlete relations, coaching development, and event organization on the West Coast. She organizes training camps for youth and adults, coordinates competitions, and devotes 20 hours per week to advancing the sport. Her biography is prominently featured on APL's official website, and she is among the few individuals in the U.S. actively training children for future Olympic-level competitions in pole and aerial sports. This aligns with APL's stated mission to gain Olympic recognition for pole sport by 2028.

44. Ms. Morar's judging experience was also improperly minimized by USCIS. While she judged two U.S. pole sport competitions, these events were organized by the Pole Sport Organization—the largest championship series in the world. Judges at these events are selected based on elite qualifications and knowledge of official rules, which the petitioner demonstrated through her training and certification. Contrary to USCIS's assertion, there is no requirement that an individual judge a "substantial number" of events to demonstrate acclaim. Selection to judge even a few high-level competitions in a specialized field reflects professional trust and recognition. Additionally, USCIS erred by misapplying the "major original contributions" criterion, even though the petitioner did not claim this category. The recommendation letters submitted were meant to support other criteria—such as nationally recognized awards, judging, exhibitions, and high remuneration—and USCIS's misclassification led to improper dismissal of key testimonial evidence.

45. Finally, the petitioner is among the few U.S.-based pole sport leaders contributing directly to Olympic development efforts. The American Pole League and IPSF have secured observer status from the Global Association of International Sports Federations (GAISF), a key step toward Olympic recognition. Ms. Morar's work with APL, her coaching of youth athletes, her performance in Olympic-aligned productions such as the Vertical.Show, and her recognized achievements all point to her being among the small percentage of athletes and professionals who have reached the top of this emerging discipline.

46. In light of the errors in legal analysis, misapplication of criteria, failure to consider submitted evidence, and mischaracterization of the petitioner's field, the petitioner respectfully requested that the Administrative Appeals Office grant this motion or appeal, and approve the EB-1A petition.

**The AAO Denial**

47. The AAO dismissed the appeal on October 29, 2024 (In Re: 33898673). The AAO concluded that Ms. Morar did not meet at least three of the requisite criteria by withdrawing the Director's favorable determination under 8 C.F.R §204.5(h)(3)(i), so did not make a favorable determination on final merits. In its October 29, 2024 decision, the Administrative Appeals Office acted arbitrarily and capriciously by rescinding the Director's prior favorable determination under the EB-1A awards criterion without providing a reasoned explanation grounded in the administrative record. Rather than identifying any material factual error in the Director's analysis, the AAO substituted generalized conclusions that the awards lacked sufficient national recognition, while failing to meaningfully address extensive objective evidence demonstrating the structured, competitive, and nationally organized nature of the petitioner's championships. The AAO further dismissed multiple expert support letters as

conclusory, without engaging with their substance, credentials, or corroboration by independent documentation. Compounding these errors, the AAO discounted the evidence of a mischaracterization of the petitioner's field—referring to her as a "pole dancer" rather than recognizing her documented profession in pole fitness and aerial athletics—thereby overlooking probative evidence that her achievements were not reviewed in a proper professional context. Finally, after narrowing the evidentiary record through these unsupported findings, the AAO declined to conduct the required final merits determination under Kazarian v. USCIS, effectively avoiding the qualitative analysis mandated by regulation and precedent. Taken together, these actions reflect a failure to consider important aspects of the case, reliance on impermissible factors, and a lack of reasoned decision-making in violation of the Administrative Procedure Act.

### Second I-290B Motion

48. On approximately May 24, 2024, Ms. Morar again timely filed I-290B notice of Appeal or Motion (IOE0930534148).

49. Ms. Elena Morar respectfully filed a motion to reopen and reconsider the denial of her EB-1A petition on the grounds that USCIS erroneously concluded her competitive awards lacked national recognition and applied a higher standard of proof than the law requires. The totality of evidence submitted clearly demonstrated that Ms. Morar had earned nationally and internationally recognized prizes for excellence and had long established herself at the very top of her field in pole and aerial sport.

50. Under 8 C.F.R. § 204.5(h)(3)(i), the petitioner must show receipt of nationally or internationally recognized prizes for excellence. USCIS disregarded this standard by dismissing Ms. Morar's multiple high-ranking placements at Pole Sport Organization (PSO) competitions—despite the fact that PSO is the largest and most structured competitive body for pole sport in the United States. Notably, Ms. Morar secured 2nd place at the 2022 PSO U.S. National Pole Championship, the organization's most prestigious annual event, which draws top-level athletes nationwide through a competitive qualifying circuit.

51. The record included official PSO rules, scoring guides, and competition structures (Exhibits 1–12), which established that her placements were objectively judged, skill-based, and awarded through a rigorous meritocratic system—comparable to national circuits in Olympic sports. These competitions were not local showcases or exhibition events; rather, they followed standardized rules, tiered skill levels, and required mastery of elite techniques such as the ayesha and cocoon. Ms. Morar's success in Level 4 (the second-highest category) in the Masters age group against top-tier competitors showed a clear national-level achievement.

52. Additionally, social media metrics reflected widespread public recognition and visibility of PSO events. With tens of thousands of followers across YouTube, Instagram, and Facebook, PSO has a national presence and credibility that USCIS unreasonably discounted. By failing to recognize the competitive nature and significance of these awards, USCIS applied an unduly narrow and restrictive interpretation of the regulation, effectively imposing a higher evidentiary threshold than required under the law.

53. Ms. Morar's appeal further asserted that USCIS improperly applied a heightened standard of proof, inconsistent with binding precedent. Under Matter of Chawathe, 25 I&N Dec. 369 (AAO 2010), the proper standard in EB-1A adjudications is the preponderance of the evidence—i.e., whether it is more likely than not that the petitioner satisfies the criteria. The record in Ms. Morar's case more than met this standard, yet USCIS effectively demanded "clear and convincing" evidence or something akin to "beyond a reasonable doubt," both of which are legally inappropriate and unsupported by regulation.

54. Beyond her competitive accolades, Ms. Morar submitted exhibits establishing her sustained prominence and leadership in the field of pole sport. She had competed—and won—in elite national and international championships for over a decade, including high-profile events in Russia such as the 2014 Privolzhsky Federal District Russian Pole Championship and the Open International Championship Miss Pole Dance Elite in Moscow.

55. Ms. Morar also served as a judge at major U.S. competitions, including the PSO Golden Gate and Pacific Championships, and the 2024 USA Aerial Championship in Miami. These roles were reserved for elite professionals and testified to her recognized expertise and authority in evaluating other top performers. Documents such as judge certifications, event programs, and photos confirmed her pivotal involvement in these elite events.

56. Moreover, Ms. Morar's leadership and standing in the sport were formally endorsed by key industry bodies, including the USA Aerial Federation (USAAF) and the American Pole League. A letter from USAAF CEO Iryna Tsyrulnik unequivocally stated that Ms. Morar was one of the few individuals at the top of the sport. Expert testimonials, including from Dr. Billy Hawkins, further corroborated her extraordinary ability and impact on the development of pole sport in the United States.

**Second AAO Denial**

57. On approximately January 30, 2025, the AAO denied the motion to reopen and reconsider. The AAO concluded that Ms. Morar did not meet the criteria under 8 C.F.R §204.5(h)(3)(i) and did not make a favorable determination on final merits. In its January 30, 2025 decision, the Administrative Appeals Office (AAO) acted arbitrarily and capriciously in violation of the Administrative Procedure Act by failing to meaningfully engage with new evidence and legal arguments submitted in support of the motion to reopen and reconsider. The AAO merely reiterated prior conclusions without addressing the substance of the rebuttals or supplemental documentation, thus ignoring its duty under 8 C.F.R. § 103.5(a) to consider new facts and legal bases. USCIS failed to meaningfully engage with expert evidence, such as expert letters from professionals with domain-specific knowledge, citing those as "conclusory" without analyzing their content, credentials, or corroboration—contrary to precedents like Matter of V-K- that protect the evidentiary value of credible expert opinions. The AAO improperly substituted its own opinion for that of subject matter experts when it rejected awards in Ms. Morar's field, offering no evidence to contradict their significance and thereby violating the evidentiary framework established by Kazarian v. USCIS. The AAO further failed to rectify the mischaracterization of Ms. Morar's field as "pole dancing" rather than "pole fitness and aerial athletics," a misframing that tainted the evaluation of her awards and achievements. Finally, despite having reviewed extensive documentation and multiple letters addressing her nationally recognized accolades, the AAO declined to conduct the required final merits determination, as mandated under Kazarian, leaving the petition unresolved on qualitative grounds. Taken together, these actions reflect a disregard for material facts, improper dismissal of probative evidence, and failure to apply the correct legal standard, thereby violating 5 U.S.C. § 706(2)(A) and warranting judicial review and reversal.

**Third I-290B Motion**

58. Ms. Morar again timely filed I-290B notice of Appeal or Motion (IOE0930534148). In her motion to reopen and reconsider, Ms. Elena Morar argued that USCIS and the AAO erred in denying her EB-1A petition by misapplying the law and failing to recognize the national significance of her awards in pole sport. She emphasized that her top placements in multiple Pole Sport Organization (PSO) competitions, including a 2nd place finish at the 2022 USA National Pole Championship, meet the regulatory requirement for "nationally or internationally recognized prizes or awards for excellence" under 8 C.F.R. § 204.5(h)(3)(i). Ms. Morar presented extensive credible evidence to support her claims, including detailed documentation of PSO's structured, merit-based competition system, standardized judging criteria, and widespread national participation. She submitted PSO rules, scoring sheets, competition manuals, and event calendars to demonstrate the rigor and national scope of these events. She also provided expert letters confirming PSO's prominence and the competitiveness of its awards, as well as evidence of her role as a judge at major events like the 2024 USA Aerial Championship, affirming her status as a

PSO's strong national visibility and public recognition, further validating the prestige of her awards. Ms. Morar argued that *USCIS* applied a higher-than-required standard of proof, contrary to the preponderance of the evidence standard established in Matter of Chawathe, and overlooked critical evidence demonstrating her sustained national and international success and recognition.

## Third AAO Denial

59. On approximately September 9, 2025, the AAO denied the motion to reopen and reconsider. The AAO concluded that Ms. Morar did not meet the criteria under 8 C.F.R §204.5(h)(3)(i) and did not make a favorable determination on final merits. The AAO states that all the evidence was reviewed. The AAO appears to take an issue that "pole and aerial sports are not recognized as national sports in many countries, including the United States." In its January 30, 2025 decision dismissing the motion to reopen and reconsider, the AAO reiterated and compounded several procedural and substantive errors that had tainted its earlier October 29, 2024 decision. First, the AAO arbitrarily reaffirmed the withdrawal of the Service Center's prior favorable determination under 8 C.F.R. § 204.5(h)(3)(i) (lesser nationally or internationally recognized awards) without engaging with substantial and specific evidence regarding the structured scoring system, competitive criteria, and national reach of the Petitioner's awards under the Pole Sport Organization (PSO). It improperly dismissed the probative value of national-level placement at PSO events, the Petitioner's documented recognition by the American Pole League, and the organization's thousands of subscribers and national footprint—all without adequately explaining why this evidence failed to show national recognition. Instead, the AAO relied on generalized and unsupported statements that pole and aerial sports are "not recognized as national sports in many countries," a conclusion untethered to the specific legal standard or any regulatory authority. Furthermore, it summarily dismissed expert letters as "not applying a higher standard of proof" without discussing their content, authorship, or corroborating evidence. Finally, the AAO failed to conduct a final merits analysis under Kazarian v. USCIS, citing its unsupported conclusion that the Petitioner had not met at least three criteria, even though it withdrew only one and declined to fully assess others. These failures reflect a pattern of decision-making that was arbitrary, capricious, and unsupported by substantial evidence, in violation of the APA, 5 U.S.C. § 706.

60. Plaintiff has exhausted all available administrative remedies. She timely filed motions to reopen, reconsider, and appeal to the AAO, and no further internal review is available.

## VII. STATEMENT OF CLAIMS

### COUNT ONE
### Violation of the Administrative Procedures Act

#### 5 U.S.C. § 706(2)(A) – Arbitrary, capricious, abuse of discretion

61. Ms. Morar realleges and incorporates by reference herein all of the allegations set forth above.

62. The APA empowers this Court to hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).

63. "While judicial review of agency decisions is highly deferential, it is not without teeth." Raj & Co. v. U.S. Citizenship & Immigration Servs. , 85 F. Supp. 3d 1241, 1248 (W.D. Wash. 2015). "The scope of review under the 'arbitrary and capricious' standard is

Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co. , 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). However, the APA empowers courts to "strike down an agency action as arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence *before the agency, or if the agency's decision is so implausible that it could not be ascribed to a difference in view of the product of agency expertise.*" Turtle Island Restoration Network v. U.S. Dep't of Commerce, 878 F.3d 725, 732 (9th Cir. 2017) (quoting Motor Vehicle Mfrs., 463 U.S. at 43).

64. Ms. Morar met her burden of proving, by a preponderance of evidence, that she met at least three of the ten criteria at 8 C.F.R. § 204.5(h)(3).

65. Ms. Morar was prejudiced and adversely affected and aggrieved by Defendants' determination that she lacked the prerequisite evidentiary showing that she is one of a small percentage of professionals who have risen to the top of the field and has received sustained national or international acclaim for her achievements which have been recognized in the field of pole sport and aerial gymnastics, and Defendants' failure to consider her final merits determination under 8 CFR §204.5(h)(2) and (3), following Defendants' misapplication of the regulations to the evidentiary requirements, deprived him of a decision in accordance with the law.

66. Ms. Morar established by a preponderance of the evidence that she received national or international awards. Defendants acted in an arbitrary and capricious manner by injecting an additional requirement that the organization that issued Petitioner's awards "have national or international recognition. Under 8 C.F.R. § 204.5(h)(3)(i), the petitioner may satisfy one of the ten regulatory criteria by showing: "Documentation of the alien's receipt of nationally or internationally recognized prizes or awards for excellence in the field of endeavor." This criterion is about the prize or award itself, not whether the field is "recognized" in a formal or institutional way. It fundamentally changed what is required to meet this criterion. Defendants may not "unilaterally impose novel substantive or evidentiary requirements" beyond those set forth in the regulations. Kazarian v. USCIS , *596 F.3d 1115, 1121 (9th Cir. 2010).*

67. Furthermore, discrediting awards and recognition simply because the sport is not "nationally recognized" in the U.S., while failing to account for international recognition, contradicts the standard of "sustained national or international acclaim" (8 C.F.R. § 204.5(h)(3)) and violates *Matter of Price, Kazarian v. USCIS,* and *Chawathe.* Defendants' failure to accept Ms. Morar's awards as evidence of national or international awards criterion was arbitrary and capricious.

68. USCIS repeatedly mischaracterized the Ms. Morar's profession as that of a "pole dancer" despite consistent, documented evidence that she is a professional pole fitness performer and aerial sports athlete—an internationally recognized and athletic discipline distinct from adult entertainment. This mislabeling persisted throughout agency decisions, including in the AAO denial, where it was acknowledged but not corrected. The agency's failure to accurately identify the nature of the Plaintiff's occupation reflects a failure to consider important aspects of the case, constituting arbitrary and capricious action under 5 U.S.C. § 706(2)(A). Such mischaracterization resulted in improper dismissal of key evidence and awards, skewed credibility assessments, and a flawed evaluation of her eligibility under the EB-1A standard.

69. USCIS further violated the APA by withdrawing previously favorable findings— specifically with regard to the Plaintiff's awards—without providing a reasoned explanation or addressing the substance of newly submitted evidence. The AAO's October 29, 2024, decision expressly rescinded the director's favorable finding under the EB-1A "awards" criterion but failed to offer a rational connection between the evidence presented (including verified national and international titles, expert attestations, and governing body documentation) and the agency's change in position. Instead, the agency relied on generic statements labeling expert letters as "conclusory," without engaging with their contents. This violates the agency's own obligation to evaluate the probative value of evidence under *Matter of Chawathe,* 25 I&N Dec. 369 (AAO 2010), and constitutes arbitrary and capricious decision-making under *Motor Vehicle Mfrs. Ass'n v. State Farm,* 463 U.S. 29 (1983). An agency cannot simply disregard probative evidence or reverse course without reasoned justification.

## COUNT TWO
### Violation of the Administrative Procedures Act

**5 U.S.C. § 706(2)(D) – Without observance of required procedure**

70. 5 U.S.C. § 706(2)(D) empowers federal courts to "hold unlawful and set aside" agency actions which are made "without observance of procedure required by law," meaning if an agency fails to follow its own rules or those set by Congress, its decision can be invalidated by a court during judicial review under the Administrative Procedure Act (APA). This is a key ground for overturning agency actions, ensuring agencies comply with statutory and regulatory mandates for fair process.

71. Ms. Morar realleges and incorporates by reference herein all of the allegations set forth above.

72. The Administrative Appeals Office (AAO) expressly declined to conduct the required *final merits determination under Kazarian v. USCIS*, 596 F.3d 1115 (9th Cir. 2010), despite the Plaintiff having submitted extensive evidence meeting multiple regulatory criteria under 8 C.F.R. § 204.5(h)(3). In the AAO decision dated October 29, 2024, the adjudicator stated that "we do not need to provide the type of final merits determination referenced in Kazarian," thereby failing to assess whether the Plaintiff, as a whole, possesses "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." This omission constitutes a clear legal error and arbitrary agency conduct under 5 U.S.C. § 706(2)(A) and (B), as binding precedent requires this two-step framework. The agency's avoidance of the need to apply the second prong of Kazarian renders the decision procedurally deficient and legally infirm.

73. Had the AAO considered the evidence of the other three criterion that Ms. Morar *submitted to the USCIS, and found that the evidence satisfied the regulations,* the AAO may have then made a final merits determination in favor of Ms. Morar. By not considering this evidence submitted to the USCIS, Defendants acted in an arbitrary and capricious manner, and adversely prejudiced Ms. Morar.

## COUNT THREE
### Violation of the Administrative Procedures Act

**5 U.S.C. § 706(2)(A) – Arbitrary, capricious, abuse of discretion and**
**5 U.S.C. § 706(2)(D) – agency failed to follow procedures required by law (Chawathe)**

74. USCIS also committed a procedural violation by rejecting Plaintiff's evidence on the ground that it was not "organized by regulatory topical areas," despite the fact that the Plaintiff clearly presented evidence corresponding to the EB-1A criteria and cross-referenced it in the table of contents.

75. In the AAO's October 29, 2024 decision, the adjudicator faulted Plaintiff for not formatting her evidence under predefined "topical areas," even though no statute or regulation mandates this formatting. This rigid, extra-regulatory requirement contradicts the flexible evidentiary framework under *Matter of Chawathe,* 25 I&N Dec. 369 (AAO 2010), which directs officers to evaluate the totality of the evidence in the context of the beneficiary's field. Rejection based on formatting alone—rather than content or substance

represents arbitrary agency conduct and a denial of fair process, violating both U.S. § 706 and due process principles embedded in APA adjudications.

76. USCIS imposed a *nonexistent regulatory requirement* that evidence must be formatted by "regulatory topical areas." There is **no statutory or regulatory mandate** requiring this structure under 8 C.F.R. § 204.5(h)(3). The Plaintiff's evidence addressed the regulatory criteria and was cross-referenced, yet the agency dismissed it due to formatting. This is textbook "arbitrary and capricious" behavior because the agency introduced on a factor (formatting) that Congress and the regulations did not intend it to consider.

77. The Matter of Chawathe, 25 I&N Dec. 369 (AAO 2010), instructs USCIS officers to consider the totality of evidence within the context of the petitioner's field—not to reject it for technical formatting issues. While Defendants noted that the reviewed the totality of evidence, Defendants were clearly prejudiced by its own unannounced procedural burden. USCIS effectively violated legally required procedures for adjudication. This failure to follow the governing adjudication framework constitutes a procedural violation under § 706(2)(D).

## COUNT FOUR
### Violation of the Administrative Procedures Act

**5 U.S.C. § 706(2)(A) – Arbitrary, capricious, abuse of discretion and**
**5 U.S.C. § 706(2)(A) - Inconsistent and Unequal Application of Legal Standards**
**5 U.S.C. § 706(2)(D) - Failure to Observe Procedure Required by Law**

78. USCIS improperly applied stricter evidentiary standards to the Plaintiff because her field—pole fitness and aerial performance—is considered a niche or emerging discipline. In the final decision dated September 9, 2025, USCIS noted that pole and aerial sports "are not recognized as national sports" and implied that achievements in such disciplines carry less evidentiary weight. However, EB-1A regulations under 8 C.F.R. § 204.5(h)(3) do not require that the field itself be nationally recognized or mainstream, only that the individual has sustained acclaim and risen to the top of their specific endeavor. The agency's devaluation of Plaintiff's international awards and institutional recognition in countries where the sport is formally recognized reflects a discriminatory application of standards. Such selective enforcement and field-based prejudice violate the equal application of the law under the APA and is inconsistent with the principle that extraordinary ability may arise in any field, regardless of its mainstream status.

79. USCIS violated § 706(2)(A) by introducing an extra-regulatory requirement—that the field itself be "nationally recognized"—which does not exist in: INA § 203(b)(1)(A) or 8 C.F.R. § 204.5(h)(3). The regulation requires national or international recognition of the individual, not mainstream acceptance of the discipline. By discounting Plaintiff's evidence because her field was "not recognized as a national sport," USCIS relied on an impermissible factor, applied a criterion not found in statute or regulation, and failed to apply the regulation as written.

80. USCIS's decision reflects **unequal application of standards** based on the *type of profession*, not the regulatory criteria. The agency implicitly applied:

• One standard for mainstream/Olympic sports

• A higher, unwritten standard for emerging or niche sports

This constitutes **selective and inconsistent enforcement,** which courts treat as arbitrary and unlawful under the APA. Agencies must apply regulations **uniformly across fields,** especially where the regulation explicitly allows "any field of endeavor."

## COUNT FIVE
### Violation of the Administrative Procedure Act

**5 U.S.C. § 706**

81. Plaintiff realleges and incorporates by reference all allegations set forth above.

82. Defendants acted in an arbitrary and capricious manner and failed to act in good faith by mischaracterizing Plaintiff's profession and field of endeavor. Despite Plaintiff's submission of extensive documentation demonstrating her standing as a professional pole fitness performer and aerial acrobat with national and international acclaim, USCIS repeatedly referred to her as a "pole dancer," a term with a materially different connotation that fails to reflect the athletic, artistic, and competitive nature of her field. Plaintiff submitted explanatory materials and expert letters clarifying the nature of her discipline and its growing global institutional recognition. Nevertheless, USCIS refused to acknowledge Plaintiff's self-identified field of extraordinary ability, thereby failing to consider critical aspects of her petition and distorting the evidentiary standard.

83. The USCIS adjudicator substituted an inaccurate and stigmatizing interpretation of Plaintiff's professional field, despite multiple expert support letters from leaders in recognized pole sport federations, international competition certificates, and performance records in Olympic-track pole and aerial sports. This improper substitution tainted the adjudicator's analysis, leading to the dismissal of probative evidence on the basis that it did not fall within the fabricated field. As a result, USCIS failed to evaluate the Plaintiff's achievements within the correct professional context, disregarding entire categories of evidence including international competition awards, institutional affiliations, and letters of support. This constituted arbitrary and capricious conduct under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), and materially prejudiced Plaintiff's right to a fair adjudication.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray that this Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Declare that Plaintiff has met her burden of proving by a preponderance of the evidence that she submitted evidence of at least 3 of the 10 required criteria of 8 C.F.R. § 204.5(h)(3)(i) - (x);

(3) Declare that Plaintiff has established by a preponderance of the evidence that she is one of a small percentage of professionals who have risen to the very top of the field, and has received sustained national or international acclaim for achievements which have been recognized in the field of pole sport and aerial gymnastics, in accordance with 8 C.F.R. § 204.5(h)(2) and (3);

(4) Declare that Defendants' decision denying the petition requesting classification as an alien of extraordinary ability was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law pursuant to 5 U.S.C. § 706(2)(A);

(5) Order Defendants to vacate the denial of the I-140 immigrant petition and enter a decision approving the classification;

(6) Award plaintiff reasonable costs and attorney's fees under the Equal Access to Justice Act; and

(7) Award such further relief as the Court deems necessary or proper, including but not limited to vacating the USCIS and AAO decisions.

Dated this 30th day of December, 2025

_E. M._

ELENA MORAR
A242204656
323 11TH AVE APT A
SAN FRANCISCO CA USA
94118
EMAIL: amor1912@mail.ru
PHONE: 6288779003

## COMPLAINT